**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| In re: ) | |
| Building Materials Corporation of America ) | |
| Asphalt Roofing Shingle Products Liability ) | MDL No.: 8:11-mn-02000-JMC |
| Litigation, ) | |
| _____) | |
| ) | |
| Michael Ragan, on behalf of himself ) | |
| and all others similarly situated, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 8:12-cv-00095-JMC |
| ) | |
| vs. ) | **ORDER AND OPINION** |
| ) | |
| Building Materials Corporation of America, ) | |
| dba GAF Materials Corporation, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on Defendant Building Materials Corporation of America, doing business as GAF Materials Corporation's ("GAF"), Motion to Dismiss the First Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted [Dkt. No. 20]. Extensive memoranda in support of and in opposition to these motions have been filed by the parties. Having considered the written arguments of the parties and the record before the court, GAF's motion is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

GAF is a Delaware corporation with its principal place of business in Wayne, New Jersey. It manufactures roofing materials, including asphalt roofing shingles marketed under the Timberline® brand name, in facilities located across the United States and sells these shingles nationwide. Plaintiff Michael Ragan ("Ragan") is a homeowner in Espyville, Pennsylvania, who

1

alleges that he arranged for the purchase and installation of Timberline shingles on the roof of his home in October 1999.  In purchasing the shingles, Ragan contends that he and his installing contractor relied on certain representations made by GAF and its agents including, but not limited to, promotional statements marketing the shingles as having superior durability qualities and expressly warranting on the shingle packaging that the product complied with ASTM International ("ASTM") industrial standard D3462.  He further alleges that the shingles installed on his roof were manufactured and sold to him with a latent defect that causes the shingles to prematurely crack, of which GAF was aware but intentionally failed to disclose to Ragan and other consumers.  Ragan brings this putative class action against GAF asserting claims for breach of express and implied warranties (counts I and II);  negligence and negligent failure to warn (counts III and IV); violation of the New Jersey Consumer Fraud Act ("NJCFA") (count V); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTRCPL") (count VI); fraudulent concealment/equitable tolling (count VIII); and declaratory and injunctive relief (count VII) arising from GAF's sale of the allegedly defective roofing shingles.

## LEGAL STANDARD

**Standard of Review**

To survive a motion to dismiss, the Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)), in order to "give the defendant fair notice . . . of what the claim is and

the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (citations omitted). Stated otherwise, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint alleging facts that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation marks omitted).

In evaluating a motion to dismiss, a plaintiff's well-pled allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

**Choice of Law**

"This case is predicated on diversity jurisdiction and was filed in federal court, so it is governed by state substantive law and federal procedural law. For diversity cases that are transferred in a [multi-district litigation], the law of the transferor district follows the case to the transferee district." *In re MI Windows and Doors, Inc. Prod. Liab. Litig.*, Nos. 2:12–mn–00001,

2:12–cv–01256–DCN, 2012 WL 4846987, at *1 (D.S.C. Oct. 11, 2012) (citing *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 345 (7th Cir. 2010) and *Manual for Complex Litigation Fourth* § 20.132). This case was originally filed in the United States District Court for the Western District of Pennsylvania. Therefore, Pennsylvania's choice of law rules apply in this case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (per curiam); *Gen. Star Nat'l Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992). Courts applying Pennsylvania law have found it appropriate to resolve choice of law issues on a motion to dismiss. *See, e.g, Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 136-38 (E.D. Pa. 2007) (finding it appropriate to determine choice of law issues on a motion to dismiss where further inquiry into the facts of the case is unnecessary for resolution of the issue).

Ragan has essentially conceded the applicability of Pennsylvania law in all claims except the NJCFA claim as he primarily relies on law from the United States Court of Appeals for the Third Circuit, the United States District Courts in Pennsylvania, and Pennsylvania state law throughout his response memorandum and only challenges the choice of law issue as it applies to the NJCFA claim. Accordingly, the court will focus its analysis of the choice of law issue on the NJCFA claim.

## DISCUSSION

**Timeliness of Legal Action**

GAF contends that Ragan's warranty claims fail because the statute of limitations expired before he commenced his action against GAF.

GAF asserts that the Pennsylvania's four-year statute of limitations for breach of warranty in the sale of goods applies to this action. *See* 13 Pa. Cons. Stat. § 2725(a) (1980).

> A cause of action [for breach of warranty] accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

13 Pa. Cons. Stat. § 2725(b). Warranties extending to future performance must expressly refer to the future. *See Antz v. GAF Materials Corp.*, 719 A.2d 758, 760-61 (Pa. Super. Ct. 1998) (finding that an express warranty providing thirty-year limited warranty coverage explicitly extended to future performance). "Implied warranties of merchantability and fitness for a particular purpose cannot explicitly extend to future performance. Therefore, claims for such warranties must be commenced within four years from tender of delivery." *Id*. at 760.

Ragan, relying solely on Plaintiffs' Omnibus Memorandum, argues that his warranty claims should survive because GAF's alleged marketing and advertising representations that the shingles would last a certain number of years was sufficient to constitute a warranty for future performance. Ragan additionally contends that, regardless of the court's interpretation of the warranty as one for future performance, his claim is still timely filed because the statute of limitations was equitably tolled by GAF's acts of fraudulent concealment.

Under Pennsylvania law, the doctrine of fraudulent concealment may toll the statute of limitations. *Baselice v. Franciscan Friars Assumption BVM Province, Inc*., 879 A.2d 270, 278 (Pa. Super. Ct. 2005).

> Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. The defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient ... mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party.

5

*Id*.

In his Amended Complaint, Ragan alleges that GAF affirmatively misrepresented the quality of its product by marketing and labeling its shingles as ASTM and code compliant despite GAF's alleged knowledge that such representations were false. *See generally,* Amended Complaint. Ragan further alleges that, due to the latent nature of the alleged defect, he had no reasonable method of discovering his cause of action until the product began to manifest an issue which would have prompted some manner of inquiry as to the source of the problem. *Id*. Ragan alleges that he did not become aware of any defect until May 2011, and Ragan further alleges that he notified GAF of his discovery in October 2011. Based on the Amended Complaint, the court finds that Ragan has sufficiently alleged fraudulent concealment/equitable tolling to survive GAF's efforts to dismiss his warranty claims based on the statute of limitations. Therefore, the court denies GAF's request to dismiss Ragan's express warranty claims on this basis. However, because Ragan's implied warranty claims may not be extended to future performance and Ragan failed to bring his implied warranty claims within the statute of limitations period, the court must dismiss the implied warranty claims with prejudice.

**Warranty Disclaimer**

GAF contends that the court should dismiss Ragan's warranty claims because GAF effectively disclaimed all express and implied warranties except as set forth in GAF's Smart Choice Shingle Limited Warranty ("Smart Choice Warranty").[1] *See* [Dkt. No. 20-7].

---

[1] The GAF Smart Choice Shingle Limited Warranty is attached as Exhibit A to the Affidavit of Linda Marion submitted by GAF in support of its motion. Ragan has not disputed the authenticity of the document and has referred to GAF's warranty in its Complaint. Therefore, the court finds that it may consider the Smart Choice Warranty in assessing GAF's motion. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (noting that a court may consider documents attached to a motion to dismiss if such documents are integral to or explicitly relied on by the plaintiff in the complaint, provided that the plaintiff does not dispute the authenticity of the documents).

Pennsylvania statutory law allows for the exclusion or modification of warranties. 13 Pa. Cons. Stat. § 2316 provides, in part,

> (a) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this division on parol or extrinsic evidence (section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable.
>
> (b) Subject to subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
>
> (c) Notwithstanding subsection (b): (1) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the attention of the buyer to the exclusion of warranties and makes plain that there is no implied warranty.. . . .

In his Amended Complaint, Ragan specifically alleges that he and the installing contractor, "when purchasing GAF Timberline shingles, . . . relied on the accuracy of the designations affixed to the shingles and their packaging." Amended Complaint, at ¶ 120. As represented by Linda Marion, the Smart Choice Warranty was also affixed to every package of GAF shingles. *See* Affidavit of Linda Marion [Dkt. No. 20-6]. The Smart Choice Warranty explicitly limits coverage and provides for a "**Sole and Exclusive Warranty**" that is "EXCLUSIVE AND REPLACES ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE." [Dkt. No. 20-7]. (emphasis in original).

Upon review of the disclaimer in the Smart Choice Warranty document that GAF contends was affixed to the packaging of the shingles, which Ragan does not dispute, the court

finds that the disclaimer complies with the statute allowing exclusion or modification of warranties. Specifically, the disclaimer appears in all capital letters directly below a heading captioned in bold type. Indeed, Ragan does not even refute GAF's argument that the disclaimer complies with the statutory requirements. Instead, Ragan argues that GAF's disclaimer and efforts to limit its express warranties fail because the Smart Choice Warranty is unconscionable.

Incorporating the arguments from Plaintiffs' Omnibus Memorandum, Ragan contends that the warranty disclaimers and remedial limitations found in GAF's Smart Choice Warranty are unconscionable and unenforceable against him and members of the purported class because GAF knew of the alleged defects in the shingles when it sold them and concealed the defects from consumers to induce sales and avoid its obligations under its warranty.

The Pennsylvania Supreme Court "has found that the common-law application of the doctrine of unconscionability is largely consonant with Section 208 of the Second Restatement of Contracts." *Bayne v. Smith*, 965 A.2d 265, 267 (Pa. Super. Ct. 2009).

> [A] contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it. The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively. The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts.

*Id.* (internal citations omitted).

In the Amended Complaint, Ragan makes several allegations regarding GAF's knowledge concerning the alleged defective condition of the shingles. *See generally*, Amended Complaint. However, the court finds that Ragan's unconscionability arguments concerning the Smart Choice Warranty or any other warranty purportedly provided by GAF are not adequately alleged in the Amended Complaint and may not be considered in determining this motion to

dismiss. Consequently, based on the the court's findings on GAF's arguments addressed above, the court will dismiss Ragan's breach of implied warranty claims. To the extent that Ragan alleges that GAF made express warranties which were not disclaimed, his breach of express warranty claims will survive this motion.

**Effect of Economic Loss Doctrine on Tort and Fraud Claims**

    **A. Negligence Claims**

GAF further contends that Ragan's claims of negligence are barred by Pennsylvania's economic loss rule and, therefore, the court should dismiss all negligence based causes of action.

Under Pennsylvania law, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Adams v. Copper Beach Townhome Communities, L.P.*, 816 A.2d 301, 305 (Pa. Super. 2003).

> Economic losses are defined as damages for inadequate value, costs of repair and replacement of the defective product, or consequential loss of property, without any claim of personal injury or damage to other property. To avoid application of the economic loss doctrine, plaintiffs must articulate harm that is distinct from the disappointed expectations evolving solely from an agreement.

*Fleisher v. Fiber Composites, LLC*, Civil Action No. 12–1326, 2012 WL 5381381, at *9 (E.D. Pa. Nov. 2, 2012) (citations and quotation marks omitted).

Here, the parties dispute whether Ragan has adequately alleged damage to "other property" to survive dismissal. GAF vigorously contends that Ragan has not alleged any damages related to the purported defect associated with the ASTM representation. First, GAF notes that Ragan fails to allege anywhere in the Amended Complaint any specific damage to property other than the shingles on his roof. In support of its argument, GAF directs the court to several allegations in the Amended Complaint where Ragan alleges in a conclusory manner, without any factual support, that he has a "real and present injury in that he owns a home with

9

substandard and damaged shingles that do not comply with ASTM D3462," and that the damage "includes the cost to replace the shingles to become code compliant and to avoid further damage to other parts of the structure," as well as "the cost of repairing the damage to . . . other property that was caused by GAF's sale of defective shingles." Amended Complaint, at ¶130. Other allegations in the Amended Complaint generally refer to "damage to property other than the GAF shingles, consequential, and incidental damages." *Id.* at ¶ 131.

Other than conclusory statements concerning speculative and hypothetical damage to Ragan's property and that of the putative class members, the court finds that Ragan has failed to sufficiently allege any damage to "other property." Additionally, it is undisputed that this case does not involve any allegations of personal injury. Without any allegation of actual injury to property other than the defective product itself and the consequential damages resulting from the replacement of the defective product, Ragan has presented the court with tort actions merely sounding in negligence which fall squarely within the parameters of those actions barred by Pennsylvania law. Accordingly, the negligence claims must be dismissed.

### B. Fraud Claims

GAF additionally asserts that Ragan's fraud claims under Pennsylvania law are also barred by the economic loss doctrine.

Pennsylvania state courts have not settled whether fraud and unfair and deceptive trade practices claims are barred by the economic loss rule. However, the United States Court of Appeals for the Third Circuit has found such claims barred, noting that

> The economic loss doctrine is designed to place a check on limitless liability for manufacturers and establish clear boundaries between tort and contract law. Carving out an exception for intentional fraud would eliminate that check on liability and blur the boundaries between the two areas of law, thus exposing manufacturers to substantially greater liability.

*Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680-81 (3rd Cir. 2002).    The Third Circuit acknowledged the limited exception to the economic loss rule for those claims of fraud which arise independently and apart from the alleged contractual obligations. *Id.* at 676.

Ragan disputes the authority of *Werwinski* and instead notes several cases that call its holding into question. However, Ragan has cited no authority from the Pennsylvania Supreme Court ruling contrarily on the issue or otherwise distinguishing his case from the Third Circuit's precedential ruling in *Werwinski*. Here, Ragan's fraud claims are based on GAF's selling shingles that were defective and noncompliant with ASTM certifications, GAF knowingly making and engaging in fraudulent, misleading, and deceptive statements and practices. Upon review of the Amended Complaint, the court determines that Ragan relies upon the alleged representations concerning the ASTM certification and the useful life of the shingles in such a way that the fraud claims are intertwined similar to the relationship of the claims in *Werwinski*. Accordingly, the court finds that Ragan's Pensylvania law fraud based claims are also barred by the economic loss doctrine and must be dismissed.

**Sufficiency of Fraud Allegations Under Federal Rule of Civil Procedure 9**

GAF seeks dismissal of all claims contained in Ragan's Amended Complaint which are based on allegations of fraudulent conduct (i.e., violation of the New Jersey Consumer Fraud Act ("NJCFA") (count V); violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTRCPL") (count VI); and fraudulent concealment/equitable tolling (count VIII)).

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the 'circumstances' of the alleged fraud in

11

order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.,* 361 F.3d 217, 223–24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)), *abrogated on other grounds by, Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). The United States Court of Appeals for the Third Circuit has generally held that the standard is met where the plaintiff pleads or alleges "the date, time and place of the alleged fraud or otherwise inject[s] precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3rd Cir. 2007) (citations and quotation marks omitted). The "[p]laintiff must also allege who made the misrepresentation to whom and the general content of the misrepresentation." *Lum*, 361 F.3d at 224.

Upon review of the Amended Complaint, the court finds that the majority of Ragan's claims of fraudulent conduct do not meet the heightened standard of Rule 9(b). Although Ragan's Amended Complaint contains copious allegations concerning GAF's advertising, marketing, and fraudulent concealment of information, Ragan fails to specify the time, place, or manner of these alleged fraudulent activities. In fact, Ragan's Amended Complaint predominantly rests on broad assertions regarding GAF's conduct in other litigation. Ragan's allegations against GAF regarding its alleged statements in brochures, on websites, in advertising, or in sales presentations fail the pleading standard of Rule 9(b) and cannot support Ragan's fraud based causes of action.

However, Ragan has not made any independent claim for common law fraud. Therefore, Ragan need plead only one allegation of fraudulent conduct with sufficient particularity to survive dismissal, which the court finds that Ragan has sufficiently provided here. Specifically,

Ragan claims that he and anyone purchasing the shingles on his behalf relied on the written representations regarding the ASTM standards and code compliance affixed to the shingles packaging purchased and installed on Ragan's home in Pennsyclvania in 1999. *See* Amended Complaint, at ¶¶ 117-122. These allegations supply the necessary who, what, when, and where to meet the Rule 9(b) pleading standard. Therefore, the court will not base its dismissal of Ragan's fraud based claims on this argument, to the extent the fraud claims could have been supported by his allegations concerning the representations affixed to the shingle packaging purchased and installed on his home.

**Proximate Cause**

GAF also contends that Ragan's fraud based claims must be dismissed because he has failed to allege that he has suffered a cognizable injury that was proximately caused by the fraudulent conduct. Specifically, GAF complains that the Amended Complaint contains references to alleged representations and statements that purportedly occurred after Ragan's purchase of the subject shingles in 1999.

Liberally construing the Amended Complaint in favor of Ragan, as the court must at the motion to dismiss stage of the litigation, GAF's objections to the sufficiency of Ragan's allegations regarding proximate cause are misplaced. Ragan's Amended Complaint contains multiple allegations of injuries which he contends are proximately caused by GAF's marketing and selling of shingles which purportedly fail to comply with ASTM D3462; a representation that Ragan alleges was attached to the packaging of the shingles and on which he relied. Accordingly, the court finds GAF's claims of insufficient allegations of proximate cause to be an inadequate basis upon which to grant its motion.

**New Jersey Consumer Fraud Act**

GAF further argues that the court should dismiss Ragan's NJCFA claim because he is not entitled to any relief under the statute. Specifically, GAF complains that Ragan is a Pennsylvania resident, that he purchased and installed the subject shingles in Pennsylvania, and was exposed to the allegedly fraudulent statements in Pennsylvania; therefore, Pennsylvania substantive law applies to his claims in accordance with Pennsylvania's choice of law rules.

"Pennsylvania applies the ... flexible, 'interests/contacts' methodology to contract choice-of-law questions." *Hammersmith v. TIG Ins. Co*., 480 F.3d 220, 226-27 (3d Cir. 2007). In determining which jurisdictions' laws will apply, the court must first consider whether there is an actual, relevant conflict between the laws. *Id*. at 230. Where there is no conflict between the laws, a choice of law analysis is unwarranted. *Id*.

> If there are actual, relevant differences between the laws, then we "examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." "A deeper choice of law analysis is necessary only if both jurisdictions' interests would be impaired by the application of the other's laws ( i.e., there is a true conflict)."

*Pacific Employers Ins. Co. v. Global Reinsurance Corp. of America*, 693 F.3d 417, 432 (3rd Cir. 2012) (quoting *Hammersmith*, 480 F.3d at 230).

If the court finds the existence of a true conflict, the final step in the choice of law analysis requires an examination of which jurisdiction has the greatest interest in the application of its laws. *See id*. at 436.

> To do so, we use a methodology that combines the approaches of the Restatement (Second) of Conflicts of Law and governmental interest analysis. We begin "the analysis by assessing each state's contacts under the Second Restatement," and "turn to § 188(2) (the general provision governing contracts), which directs us to take the following contacts into account: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." This requires "more than a

14

> mere counting of contacts." Instead, "we must weigh the contacts on a qualitative scale according to the policies and interests underlying the particular issue."

*Id*. at 436 (quoting *Hammersmith*, 480 F.3d at 230).

In evaluating the first step of the choice of law analysis, courts have found an actual conflict between the consumer protection and laws of Pennsylvania and New Jersey. *See, e.g., Heindel v. Pfizer, Inc.,* 381 F. Supp. 2d 364, 373–74 (D.N.J.2004) (finding a conflict between Pennsylvania's Unfair Trade Practices and Consumer Protection Law and New Jersey's Consumer Fraud Act). Additionally, courts have determined that the governmental policies underlying each jurisdictions' laws are substantially similar. *Id.* Accordingly, focus of the choice of law analysis lies in the determination of jurisdiction with the most substantial contacts with the matter at issue. Here, the place of negotiating, contracting, and performance occurred in Pennsylvania. The only relevant contact between the instant matter and New Jersey is GAF's principal place of business. The court finds that contact insufficient to warrant extension of the NJCFA to Ragan's claims. Therefore, the court dismisses Ragan's NJCFA cause of action against GAF with prejudice.

**Declaratory and Injunctive Relief**

Finally, GAF seeks dismissal of Ragan's claims for a declaratory judgment and injunctive relief on the basis that Ragan has only asserted remedies and not independent causes of action.

It is well-established under Pennsylvania law that claims for declaratory and injunctive relief are more in the nature of alternative remedies that may be awarded once a party prevails on a proper cause of action, and not causes of action to be pursued independent of an underlying claim. *See Volunteer Firemen's Ins. Services, Inc. v. Fuller*, Civil No. 1:12–CV–2016, 2012 WL 6681802, at *12 (M.D. Pa. Dec. 21, 2012). While Ragan may request declaratory and injunctive

15

relief as remedies where appropriate based on properly stated causes of action, the court must conclude that the Amended Complaint fails to state an independent basis for either declaratory or injunctive relief separate and apart from the other causes of action asserted in the Amended Complaint. Therefore, the court shall consider Ragan's claims for injunctive and declaratory relief as alternative and/or additional remedies for the causes of action already asserted but dismiss the claims as independent causes of action.

## CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** GAF Materials Corporation's Motion to Dismiss the First Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted [Dkt. No. 20] as set forth herein. Plaintiff Michael Ragan may amend his complaint to address the deficiencies noted by the court in this order in support of his warranty, negligence, and claims under Pennsylvania law. Any such amended pleading must be filed within thirty (30) days of the date of this order.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

April 30, 2013
Greenville, South Carolina